UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE PRICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13-cv-1785 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Price filed a Motion for Sanctions [103] against Defendants pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. ¶ 1927. For the reasons stated below, that Motion [103] is denied.

## BACKGROUND

Defendant Officers Germaine Wrencher and Kazan Wilson contend that on January 29, 2013 they received a dispatch informing them that an individual wearing a purple shirt and blue jeans was wildly swinging a belt in a Dunkin' Donuts restaurant. (Dkt. No. 107 at 3.) Defendants answered the call and patrolled the area. (*Id*.) They observed Plaintiff, matching the description previously given and swinging a belt in a "lasso-like fashion" at objects on the street. (*Id*.)

In her Second Amended Complaint, Plaintiff alleges she was merely walking in downtown Chicago. (SAC ¶ 9.) She claims that she was approached by two officers and was asked about a crime but refused to answer and continued on her way. (*Id*. ¶¶ 10-12.) Defendants are alleged to have exited their vehicle and injured Plaintiff's shoulder while attempting to restrain her. (*Id*. ¶¶ 14, 16.) An ambulance was called to transport Plaintiff to Northwestern

Memorial Hospital for treatment of her injured shoulder. (*Id.* ¶ 17.) According to Plaintiff, she was taken to a mental health facility by Defendants and "illegally committed to mental health treatment." (*Id.* ¶¶ 56-57.) It is not clear from the Second Amended Complaint if she is referring to Northwestern Memorial Hospital or another facility. According to Plaintiff, she voluntarily committed herself on January 30, 2013, but again does not state whether that was at Northwestern Memorial Hospital or another facility. (Dkt. No. 109, p.8.) Plaintiff also argues that it does not matter that she was not committed at Northwestern Memorial Hospital on the day of the incident because detaining her for the purpose of involuntary admission violates the Illinois Mental Health Code. (*Id.*)

Defendants portray the incident differently. Defendants claim their initial questioning was met with gibberish from Plaintiff as she continued to whip her belt, causing pedestrians to move out of the way. (Dkt. No. 107, p. 4.) Defendants then determined that she would need to be detained, though not arrested, for her own safety and the safety of others. (*Id.*) As Defendants attempted to handcuff her, she struggled to break free and, in the process, caused a fracture in her shoulder area. (*Id.*) Defendants called an ambulance for "medical attention," and Plaintiff was admitted to Northwestern for emergency medical care. (*Id.* at 5.) Defendant Wilson completed forms to have Plaintiff involuntarily committed, but this did not occur. (*Id.*) Plaintiff was instead discharged to a shelter. (*Id.*) The next day, Plaintiff was involuntarily committed to Mercy Hospital and Medical Center but also applied for voluntary admission. (*Id.* at 5-6.)

Price filed a Complaint, alleging a variety of claims against the Defendant officers and the City of Chicago stemming from this incident. Defendants sought to discover Plaintiff's mental health information ("MHI"). (Dkt. No. 52 at 3-4.) This request was granted. (Dkt. No.

2

30.) Plaintiff was uncooperative in providing this information, and Defendants moved for sanctions, which were granted. (Dkt. No. 71.) Plaintiff has now filed this Motion for Sanctions, arguing that Defendants made misrepresentations concerning Plaintiff's MHI, which resulted in unnecessary delay and increased the cost of litigation. (Dkt. No. 103 at 10.)

## LEGAL STANDARD

Sanctions are governed, in part, by Federal Rule of Civil Procedure 11. In filing a pleading and advocating for it, attorneys certify, to the best of their knowledge, information, and belief, that existing law warrants its legal contentions and that its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). A frivolous argument or claim is "baseless and made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*)). Sanctions are appropriate where the party has not filed a pleading for proper purposes but, instead, asserts its claims simply to harass or cause unnecessary delay or expense. Fed.R.Civ.P. 11(b)(1). The purpose of Rule 11 sanctions "is to deter baseless filings in the district court." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013).

Sanctions may also be issued under 28 U.S.C. § 1927. "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Liability under § 1927 is appropriate where an attorney's conduct is marked by bad faith. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994). "The Seventh Circuit has concluded that such sanctions are appropriate

3

(1) in instances of a serious and studied disregard for the orderly processes of justice, (2) when an attorney pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, and/or (3) where a claim is without a plausible legal or factual basis and lacking in justification." *Krukowski v. Omicron Technologies, Inc.*, Case No. 10 C 5282, 2013 WL 708042, at *5 (N.D.Ill. Feb. 26, 2013) (internal quotations and citations omitted). Whether to award sanctions pursuant to Section 1927 is within the discretion of the court. *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

## ANALYSIS

Defendants argue that the Motion is procedurally defective because Plaintiff failed to comply with Rule 11(c) by not giving Defendants notice that Plaintiff intended to move for sanctions. Litigants moving for sanctions under Rule 11 must provide their adversaries with either a copy of the motion or a warning letter twenty-one days prior to filing the actual motion. *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). This notice must detail the specific conduct that violates Rule 11(b). Fed. R. Civ. P. 11(c)(2).

Defendants claim that the first time they were made aware of any claimed sanctionable conduct was when Plaintiff's Motion for Sanctions was filed before the Court. Plaintiff contends that the Defendants did receive proper notice through an email sent to Defendants on May 11, 2015. (*See* Dkt. 103, Exh. I.) The email states that Plaintiff would not voluntarily dismiss counts relating to Plaintiff's hospitalization based on her mental health in part due to Defendants' conduct: "you have repeatedly raised arguments, and even obtained sanctions in this case, based on your representations to the Court that the [D]efendant Officers detained and transported Ms. Price for mental health treatment." (*Id.*)

4

Plaintiff claims in her reply brief that "Plaintiff warned the defendants that they have repeatedly raised arguments . . . based on misrepresentations to the Court." (Dkt. No. 109 at 3.) However, there was no notice that Plaintiff intended to seek sanctions. The Seventh Circuit has held that "a letter informing the opposing party of the intent to seek sanctions and the basis for the imposition of sanctions . . . is sufficient for Rule 11 purposes." *Matrix IV*, 649 F.3d at 552 (citing *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008)). But the letter in that case notified the party that sanctions would be sought. The Plaintiff's email only reasserts her evidentiary bases for certain claims made against the Defendants. The email does not mention sanctions, frivolous arguments, or dilatory behavior. Therefore, it does not provide adequate notice and cannot fulfill the safe-harbor provision. Plaintiff's Motion for Sanctions under Rule 11 is procedurally defective.

However, even assuming that Plaintiff had given Defendants notice, sanctions would not be appropriate. Plaintiff claims that Defendants initially pled, and made representations to the Court, that she was taken to the hospital to be involuntarily committed but that Defendants then changed their reasoning in later filings to argue that she was taken there so that her shoulder could receive medical attention. (Dkt. No. 103 at 9.) Plaintiff cites to the Original Case Incident Report, stating that Plaintiff "was transported into [Northwestern Memorial] for treatment and involuntary admission into mental ward," as well as a Tactical Response Report, stating the same thing. (*Id*. at 5.) Plaintiff also points to the depositions of Officers Wrencher and Wilson where they indicated that they initially believed that Plaintiff would need to be taken to the hospital for a mental evaluation. (*Id*. at 6.) Plaintiff now argues that the shoulder injury rationale for calling the ambulance constituted an "unfair surprise" that caused "delay and increased costs of litigation." (*Id*. at 10.) Plaintiff then asks the Court to remove all sanctions

5

placed on her, bar Defendants' arguments that they had probable cause to arrest Plaintiff, and to impose costs against Defense counsel. (*Id*. at 10-11.)

Plaintiff seriously misrepresents the record. Though Officers Wilson and Wrencher contemplated sending Plaintiff to a hospital for a mental evaluation, the record reflects that once she was physically injured, they called in the ambulance for her shoulder injury. Both officers testified that their original intent to take Plaintiff to the hospital for a mental evaluation was superseded by her injury and that it was at that point that they called for an ambulance.[1] Further, Plaintiff propounded a Request to Admit in August of 2013, stating, "[a]n ambulance was called to the scene by Germaine Wrencher, Kazan Wilson, or other Chicago Police officers for the medical treatment of Jacqueline Price," which was admitted by Defendants. (Dkt. No. 107, Ex. F. at No. 16.)

After Plaintiff was transported to the hospital, Plaintiff claims that Defendants "failed to process Plaintiff as an involuntary admittee, which is a criminal offense under the Illinois Mental Health and Development Disabilities Code 405 ILCS 5/3-606." (*Id*. at 7.) However, that statute is only applicable when a person is involuntarily admitted into a mental health facility. 405 ILCS 5/3-606. Medical records indicate that she was not admitted into Northwestern for mental health treatment. (Dkt. No. 107, Ex. C, at NWMH at 00025.) Further, Officer Wilson testified that he filled out paperwork to have Plaintiff involuntarily committed. Plaintiff argues that her involuntary commitment began when she was handcuffed for her erratic behavior on the street. (Dkt. No 109 at 8.) Plaintiff appears to be using involuntary commitment and arrest interchangeably. Defendants' Answer indicated that Plaintiff was not arrested for a crime but

---

[1] Plaintiff purportedly quotes Defendants' Response to her Motion to Reconsider, stating "[t]he defendant Officers detained and transported Plaintiff for mental health treatment." (Dkt. No. 103 at 5.) This quote does not appear in the cited material.

taken into custody for the purpose of a mental health evaluation. There is a difference between having probable cause for an arrest and having "reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm," under the statute. *See* 405 Ill. Comp. Stat. 5/3-606.

Essentially, Defendants' theory of the case is that the Officers were in the process of detaining Plaintiff under the Mental Health Code when that process was interrupted by Plaintiff's injury. Plaintiff was then transported to the hospital to treat her injury where, although involuntary commitment paperwork was filled out, Plaintiff was not committed but released to a shelter. Plaintiff then voluntarily committed herself the next day. These assertions appear to have a good-faith basis in the record for the purposes of Rule 11 and were not made simply to harass or cause unnecessary delay or expense. Nor does it appear that any defense attorney's conduct was marked by bad faith for the purposes of § 1927.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Sanctions [103] is denied.

Date:      October 8, 2015                                    _____
                                                                                     JOHN W. DARRAH
                                                                                     United States District Court Judge

7