UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE PRICE, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 13-cv-1785 ) |
| GERMAINE WRENCHER, KAZAN WILSON, and CITY OF CHICAGO, | ) Judge John W. Darrah ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jacqueline Price filed a Second Amended Complaint ("SAC") against Defendants Germaine Wrencher, Kazan Wilson[1] (collectively, "Defendant Officers"), and the City of Chicago, asserting various constitutional violations pursuant to 42 U.S.C. § 1983 and claims under Illinois law. Plaintiff's claims stem from an interaction between Plaintiff and Defendant Officers on January 19, 2013. Defendants filed a Motion for Summary Judgment [148] on all counts. For the reasons set forth more fully below, Defendants' Motion for Summary Judgment [148] is granted.

### **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Local Rule

---

[1] Defendant Kazan Wilson has since passed away.

56.1(b)(3)(C) permits the nonmovant to submit "any additional facts that require the denial of summary judgment. . . ." To overcome summary judgment, "the nonmoving party must file a response to each numbered paragraph in the moving party's statement." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to the specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the nonmovant's response only provides extraneous or argumentative information, the response will fail to constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). If the responding party fails to comply with Rule 56.1, its "additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey, Illinois*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.

**BACKGROUND**

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Defendants Wilson and Wrencher were employees of the City of Chicago, acting within the scope of their employment during their interaction with Plaintiff on January 28, 2013. (DSOF, ¶¶ 3-4.) On January 29, 2013, at approximately 5:51 a.m., the Chicago Office of

2

Emergency Management and Communication received a 911 call, which reported a disturbance near the 600 block of South Wabash Avenue. (*Id.* ¶¶ 5-6). The caller stated that a female wearing a purple shirt and blue jeans was swinging a belt at people as they walked past her. (*Id.* ¶ 7.) The caller also stated that the customers of a Dunkin' Donuts near that location were frightened that she might hit someone with the belt. (*Id.* ¶ 8.) Defendant Officers were dispatched to the Dunkin' Donuts in response to the 911 call. (*Id.* ¶ 9.)

Defendant Officers entered the Dunkin' Donuts and spoke to an employee. (*Id.* ¶ 10.) The employee stated that an African-American female had been in the restaurant and causing a disturbance. (*Id.* ¶ 11.) The employee also stated that the female had been swinging a belt while inside the Dunkin' Donuts. (*Id.* ¶ 12.) The employee gave Wilson a description of the individual, who was wearing a purple shirt and blue jeans. (*Id.* ¶ 14.) Defendant Officers drove around the vicinity of the Dunkin' Donuts to look for the individual. (*Id.* ¶ 16.)

Several minutes later, they observed Plaintiff walking near the Dunkin' Donuts. (*Id.* ¶ 17.) Plaintiff matched the description given by the Dunkin' Donuts employee and was wearing a purple shirt and blue jeans. (*Id.* ¶¶ 18-19.) Plaintiff was talking to herself and swinging a leather belt. (*Id.* ¶ 20.) Defendant Officers observed Plaintiff swinging a leather belt in a lasso-type fashion and speaking "gibberish." (*Id.* ¶¶ 21-22.) Defendant Officers approached and asked Plaintiff to stop. (*Id.* ¶¶ 23-24.) Plaintiff refused, told the officers to get away from her, and walked away from the officers. (*Id.* ¶¶ 25-26.) Defendant Officers exited their parole vehicle and made the decision to take Plaintiff into protective custody. (*Id.* ¶¶ 27-28.)

Wrencher grabbed Plaintiff's right wrist with one of his hands. (*Id.* ¶ 30.) Wrencher used "some force" when he took hold of Plaintiff's wrist. (PSOF ¶ 4.) Wrencher used his other hand to hold Plaintiff's elbow but did not apply pressure. (DSOF ¶ 32.) At the time Wrencher

3

grabbed Plaintiff's arm, she was still walking away from Defendant Officers.[2]  (*Id.* ¶ 33).
Plaintiff lost her balance and her body went forward with her right arm behind her.  (*Id.* ¶¶ 34-35.)  Plaintiff's arm swung back.  (*Id.* ¶ 36.)  Plaintiff and Defendant Officers heard a noise like a popping noise or a loud crack, and Plaintiff's arm went limp.  (*Id.* ¶¶ 37, 38.)  Wrencher let go of Plaintiff and guided her to a position against the patrol vehicle.  (*Id.* ¶ 39.)

Wilson called an ambulance, which arrived within minutes and took Plaintiff to Northwestern Memorial Hospital.  (*Id.* ¶¶ 40-41.)  Plaintiff was taken into the emergency room.  (*Id.* ¶ 42.)  Defendant Officers followed the ambulance to Northwestern.  (*Id.* ¶ 44.)  Wilson spoke to a medical professional and asked that Plaintiff be evaluated for mental health reasons.  (*Id.* ¶¶ 45-46.)  Plaintiff's treating physician did not request a psychological evaluation, and Plaintiff did not receive a psychological evaluation from any doctor at Northwestern.  (*Id.* ¶¶ 48-49.)  Plaintiff was diagnosed with a closed greenstick fracture of her right humerus.  (PSOF ¶ 1.)  After she was treated, Plaintiff was released from Northwestern with her belongings.  (DSOF ¶ 50.)  Plaintiff was not charged with any crimes.  (*Id.* ¶ 53.)

On January 30, 2013, Plaintiff was admitted to Mercy Hospital for psychological reasons.  (*Id.* ¶ 51.)  Defendant Officers were not involved in Plaintiff's being admitted to Mercy Hospital.  (*Id.* ¶ 52.)

**LEGAL STANDARD**

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Courts are required to view all facts and make reasonable inferences "in the light

---

[2] Plaintiff generally denies this statement but does not include a reference to any material.  A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to the specific supporting material."  *Smith*, 321 F.3d at 683.

4

most favorable to" the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute of material facts exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To overcome a motion for summary judgment, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The nonmovant must show "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).

"A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' . . . it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson*, 477 U.S. at 248-49).

**ANALYSIS**

*Excessive Force*

In Count I, Plaintiff alleges excessive force against the Defendants. "First, in a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of

5

excessive force on the plaintiff. . . as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012) (internal citations omitted). "[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). An officer's actions do not constitute excessive force when those actions are "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Plaintiff's SAC alleges that Defendant Officers slammed her against an SUV while forcefully pulling her arm and causing a fracture. (SAC, ¶¶ 14-15.) However, the uncontested facts do not show that this occurred. Wrencher grabbed Plaintiff's right wrist with one of his hands, using "some force," and used his other hand to hold Plaintiff's elbow without force. (DSOF ¶ 30, 32; PSOF ¶ 4.) When Plaintiff lost her balance and her body went forward with her right arm behind her, it caused a fracture. (DSOF ¶¶ 34-35; PSOF ¶ 1.) There is no evidence that Defendant Officers forcefully pulled her arm or slammed her against an SUV[3].

Wrencher described the technique he used as an "arm bar." (PSOF ¶ 3.) The Seventh Circuit has described "arm bar" and "wrist lock" techniques as "minimally forceful techniques designed to subdue non-compliant subjects and prevent escalation." *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013). Plaintiff refused to speak to Defendant Officers while speaking to herself in gibberish and swinging a belt. Given the circumstances, the use of an "arm bar"

---

[3] Plaintiff alleges that the greenstick fracture she sustained required "considerable" force. In her Statement of Additional Facts, this proposition is supported by a website article. (PSOF, ¶ 2.) Facts that rely on inadmissible hearsay are disregarded for the purposes of summary judgment. *Eisenstadt*, 113 F.3d at 742.

technique was an objectively reasonable use of force meant to induce cooperation. Like the officers in *Fitzgerald*, Defendant Officers did not attempt to strike or beat Plaintiff or completely disable her. *Id.* The fact that Plaintiff was injured appears to be an unfortunate accident. Defendants' Motion for Summary Judgment is granted as to Count I.

*Search and Seizure*

In Counts II and III, Plaintiff alleges that Defendants illegally seized her. "The Fourth Amendment prohibits unreasonable seizures." *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005). In determining whether a violation occurred under the Fourth Amendment, a court must first consider whether Plaintiff was seized and then whether the search was reasonable. *Id.* A person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person [in the subject's position] would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In Count II, Plaintiff alleges that Defendant Officers unreasonably searched and seized her when they "attempted to compel her under penalty of law to answer questions about a crime." (SAC ¶ 25.) Defendant Officers approached and asked Plaintiff to stop. Plaintiff refused and walked away from the officers. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). No seizure occurred when Defendant asked Plaintiff to stop and speak with them. Defendants' Motion for Summary Judgment is granted as to Count II.

In Count III, Plaintiff alleges that the Defendant Officers "had no probable cause to seize Plaintiff, and illegally transported her to a mental health facility." (SAC ¶ 29.) As an initial matter, Plaintiff was transported to Northwestern Memorial Hospital for medical treatment and never received any psychological examination. Nevertheless, "seizures made to effectuate an

7

involuntary mental health commitment are analyzed under the Fourth Amendment's 'probable cause' standard." *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013). Probable cause exists where there are "reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992). Pursuant to Illinois law, a "peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm." 405 Ill. Comp. Stat. 5/3-606. It is undisputed that Defendant Officers observed Plaintiff swinging a leather belt in a lasso-type fashion and speaking "gibberish." (DSOF ¶¶ 21-22.) Defendant Officers also knew that Plaintiff matched the description of someone in a local Dunkin' Donuts causing a disturbance, swinging a belt at people, and frightening customers. (*Id.* ¶¶ 8, 11-12.) Probable cause supported a seizure of Plaintiff under Illinois law.

Probable cause also existed to arrest Plaintiff. "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).

As discussed above, Defendant Officers knew that Plaintiff matched the description of someone in a local Dunkin' Donuts causing a disturbance, swinging a belt at people, and frightening customers. (DSOF ¶¶ 8, 11-12.) Under Illinois law, "[a] person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 Ill. Comp. Stat. 5/12-1. Probable cause existed to detain Plaintiff for assault. Defendants' Motion for Summary Judgment is granted as to Count III.

*Fifth Amendment*

In Count IV, Plaintiff alleges a violation of her Fifth Amendment right against self-incrimination. In Count V, Plaintiff alleges that she was retaliated against for refusing to incriminate herself. The statute of limitations for § 1983 actions in Illinois is two years. *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). Plaintiff did not raise her Fifth Amendment claims until her Second Amended Complaint, which was filed on April 15, 2015. The interaction between Plaintiff and Defendants took place on January 29, 2013. Plaintiff's Fifth Amendment claims are barred by the statute of limitations.[4]

Even if the claims were not time-barred, a "violation of the *Miranda* safeguards cannot provide the basis for § 1983 liability without use of a suspect's statements against him in a 'criminal case.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1024-25 (7th Cir. 2006). Plaintiff was not charged with any crimes, and no statements were used against Plaintiff in a criminal case. In order to show retaliation, Plaintiff must show that: (1) she engaged in constitutionally protected activity; (2) she suffered a deprivation that would likely deter protected

---

[4] Plaintiff fails to respond to the statute of limitations argument. "This court has no duty to research and construct legal arguments available to a party." *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995).

activity in the future; and (3) the protected activity "was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff has not presented facts to show that she was restrained in retaliation for her decision to not answer questions. As discussed above, probable cause supported a seizure of Plaintiff under Illinois law, and there was also probable cause to arrest Plaintiff.

Defendants' Motion for Summary Judgment is granted as to Counts IV and V.

*Fourteenth Amendment*

In Count VII, Plaintiff alleges that she was committed to a mental health institution without any emergency or exigent circumstances, in violation of her rights under the Fourteenth Amendment. There is a general due process right to refuse medical treatment. *See Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278-79 (1990). However, Plainitff was not committed to a mental health institution by Defendant Officers. Plaintiff was released from Northwestern Memorial Hospital after being treated for injuries. The next day, Plaintiff and her husband admitted her to Mercy Hospital for psychological reasons. Defendant Officers were not involved in Plaintiff's being admitted to Mercy Hospital.

Defendants' Motion for Summary Judgment is granted as to Count VII.

*Monell*

In Count VI, Plaintiff alleges that the Defendants violated her constitutional rights pursuant to policies maintained by the City. Plaintiff's *Monell* claim was dismissed with prejudice as a discovery sanction, as further described in the Memorandum Opinion and Order issued on January 26, 2016. (Dkt. 144.) Plaintiff has also not shown a constitutional injury. In generall, when there are no constitutional injuries, there is no *Monell* violation.

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Defendants' Motion for Summary Judgment is granted as to Count VI.

*State Claims*

Plaintiff alleges several claims under state law. Count VIII alleges a violation of the Illinois Mental Health and Developmental Disabilities Code pursuant to 405 Ill. Comp. Stat. 5/3-606. Count IX alleges a supplemental battery claim. Count X alleges negligent spoliation of evidence due to the failure to preserve the belt in evidence. Defendants allege that these claims are barred by the statute of limitations. Plaintiff's state-law claims against Defendants must have been brought "within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101(a). However, Plaintiff did not raise these claims until her Second Amended Complaint, which was filed on April 15, 2015. The interaction between Plaintiff and Defendants took place on January 29, 2013. Plaintiff's state-law claims are barred by the statute of limitations.[5]

As to Count VIII, Plaintiff was not involuntarily committed. Therefore, there was no violation of the Illinois Mental Health and Developmental Disabilities Code under 405 Ill. Comp. Stat. 5/3-606. As to Count IX, Defendants argue that Defendant Officers are shielded from the battery claim by the Local Governmental and Governmental Employees Tort Immunity Act, which shields public employees from claims arising during the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 Ill. Comp. Stat.

---

[5] Again, Plaintiff fails to respond to the statute of limitations argument, and "[t]his court has no duty to research and construct legal arguments available to a party." *Head Start*, 46 F.3d at 635.

10/2-201, 202. Willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm, or if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1–210. Plaintiff has not presented facts showing that Defendant Officers acted with actual or deliberate intention to cause harm or showed an utter indifference to or conscious disregard for her safety.

As to Count X, Defendant Officers never had possession of the belt. At the hospital, Plaintiff's belt was included with her belongings and placed in a plastic bag. (DSOF ¶ 43.) After she was treated, Plaintiff was released from Northwestern Memorial Hospital with her belongings, including her belt. (*Id.* ¶ 50.) If Defendant Officers never had the belt, they could not have lost or destroyed it, negligently or otherwise.

Defendants' Motion for Summary Judgment is granted as to Counts VIII, IX, and X.

*City of Chicago*

In Count XI, Plaintiff alleges that the City of Chicago is liable for Defendants' actions under *respondeat superior*, as the actions were taken within the scope of their employment as Chicago Police Officers. "[A] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. As Defendant Officers are not liable for any injury, the City is not liable. Defendants' Motion for Summary Judgment is granted as to Count XI.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [148] is granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date: May 20, 2016  /s/ _____
JOHN W. DARRAH
United States District Court Judge